NO. 03-14-00313-CR

IN THE

THIRD DISTRICT OF TEXAS

SUPREME JUDICIAL COURT OF APPEALS

FILED
March 16, 2015
Third Court of Appeals
Jeffrey D. Kyle
Clerk

KIRT ALLEN ESTHAY,

APPELLANT.

VS

THE STATE OF TEXAS

APPELLEE.

APPeal of Cause NO. DAS-13-01849 From
THE 119Th DISTRICT COURT OF CONCO COUNTY

MoTion To SUPPliment ORIGINAL PRo SE
Brief or response to Anders Brief

To The Honorable Justices of the Court of
Appeal:                         I.
     Come's now Kirt Allen Esthay,
Appellant Pro se. Motion To suPPliment or
Amend Origina Petition as Per TraP Rule 68.10.
A Pro se litigant is intitled To amend or
SuPPliment a Plending before the court
makes its determination and/or in the
furtherence of Justice as need:

RECEIVED
MAR 16 2015
THIRD COURT OF APPEALS
JEFFREY D. KYLE

I.

## II.

On September 3, 2014, Appellant received notice by the Texas Department of criminal Justice. mail room, at the Mark W. Stiles Unit, 3060 F.M. 3514 Beaumont, Texas, 77705 That Attorney had filed an Anders brief and Appellant's right to File a Pro se brief or response to the Adnder's brief.

## III.

On September 8, 2014, the appellate record was First made available to Appellant. The Court did give the Appellant Two extension therefore making deadline February 27, 2015 for filing brief or response.

## IV.

This is Appellant First brief, Appellant has verey Limted access to Law Library 10 hour's a week if Lucky, had gone through Unit Lock down, 21 days. Library closed for holiday's. Appellant not Knowing what he's doing but Learning.

## V.

For the reason stated above, Appellant respectfully request to be allowed To Suppliment or Amend Pro se brief or response in support of Appellant's appeal.

                    Respectfully submitted,

                    Kirt Allen Esthay, Pro se

3060 F.M. 3514 Beaumont, Texas 77705

2.

APPellanT PraYs that the Court grant this motion To SuPPliment or Amend Original Petition or resPonse to Ander's brief.

Respectfully submitted,

Kirt Allen EsThaY
Petitioner, Pro Se
Texas DePartment of Criminal Justice Institutional Division
MarK W. Stiles Unit
T.P.C.J-ID# 1919078 at
3060 F.M. 3514
BeaumonT, Texas 77705

## CERTIFICATE OF SERVICE

I hereby certifY that a true coPY of the above MoTion for SuPPliment or Amended Petition or brief was Served on Mr George McCrea, District AttorneY by Placing a coPY in the U.S. Mail addressed To: Tom Green CounTY CourThouse, CourT street Annex, 124 West Beauregard, San Angelo, Texas 76903; ON this the  daY of March 11, 2015

Kirt Allen EsthaY
KirT Allen EsthaY
Relator

3.

## NAMES OF All ParTies

In order that the members of the CourT may determine disqualifications or refusal PursuanT To Rule 74(a) of the Texas Rules of AppellanT Procedure, AppellanT certifies that the following is a complete list of all parties interested in the outcome and their attorneys of record:

1.) AppellanT, KirT Allen EsthaY #1919078, 3060 F.M., 3514, Beamont, Texas 77705.

2.) Defense and trial attorneY, Gerald R. RatLIFF, State Bar No. 16566000, 125 South Irving, San Angelo Texas 76903.

3.) AttorneY of record on appeal, KIRTK HAWKins, State Bar No. 16566000, P.O. Box 3645, SAN ANGlo, Texas 76902.

4.) The Honorable Ben Woodward, Trial Judge, Tom Green CountY Courthouse, 112 west Beauregard, San Angelo, Texas 76903

5.) AppellanT v. STaTe oF Texas, represented bY Mr. George McCrea, 119Th District AttorneY, and Mr. BrYan Clayton, Assistant District AttorneY, Tom Green CountY courThouse, Court Street Annex, 124 west Beauregard, San Angelo, Texas 76903.

4.

NO. 03-14-00313-CR
(Trial court NO. Das-13-01849)
IN THE
Court of APPeals
For The Third Supreme Judicial District of Texas


Kirt Allen Esthay,
APPellant.

VS.

The State of Texas,
APPellee.


From the 119TH Judicial District Court
of Concho County, Texas
Honorable Ben Woodward, Judge Presiding


BRIEF OF APPELLANT


To The Honorable COURT OF APPeals For The Third
SUPreme Judicial District of Texas;


    Comes Now, Kirt Allen Esthay, APPellant
Pro SE in the above-entitled and numbered
Cause, and files this Brief of APPellant in
support thereof would show this honorable court
as follows:
1.

RECEIVED
MAR 16 2015
THIRD COURT OF APPEALS
JEFFREY D. KYLE

## Statement of Case

Appellant, Kirt Allan Esthay, was charged with aggravated assault with a deadly weapon a 2nd degree felony, for an offense alleged to have occurred on August 24, 2013. The indictment (C.R.P.7) also contained an enhancement paragraphs, therefore raising the possible punishment of 25 to 99 years or life. The case was trid before a jury beginning February 17, 2014. The jury returned a verdict of guilty on February 18, 2014. The Appellant pled true to both enhancements and the Appellant was sentenced to Twenty Five (25) years in the texas Department of criminal Justice Institutional Divison by the court. The court also found that the Defendant used or exhibited a deadly weapon. Judgement (CR. 101.)

2.

# ISSUES Presented

1.) The state failed to Prove beyond a reasonable doubt that the said weapon used in the commission of said offense was a deadly weapon.

2.) The state failed to Prove Intent.

3.) The state failed to Prove a Threat had been made, beyond a reasonable doubt.

4.) The state Failed To Prove a threat with intent For imminent bodily injury.

5.) The State Failed to Prove an assault was committed.

6.) The evidence is legally insufficient To Support the conviction.

7.) Denial of due Process under the sixth and Fourteenth Amendment.

8.) The evidence is Factually insufficient To Support conviction.

9.) Prosecutional misconduct.

10.) Ineffective assistance of counsel.

11.) Inconsistent and contradicting Testimony of state's witnesses.

3.

## STATEMENT OF The EVIDENCE

ON AUGUST 24, 2013 the Eola Volunter Fire Department held a trap shoot to raise funds for Their department. Mrs Dorotik testifying for the State Mrs Staci Dorotik was the dispatcher for fire department. She testified that at some point during the day the appellant, Kirt Allen Esthay, had showed up and he reeked of alcohol. Appellant was said to have been causing trouble, bouthering people particibating. Mrs Dorotik claimed appellant had been trying to talk with her. (3RR 27; 10-11:) Mrs Dorotik testified she had told appellant to to leave her along and to leave the event. State asked Mrs Dorotik if the person she had just described was in court today. Mrs Dorotik was unable to Identify appellant, ontill stated lead her Here (3RR 28; 15-25:) (and. 3RR 29; 2-14:) Mrs Dorotik had loaned her phone to some one so that they could call the law for her. She claimed it was close to dark when this took place 8:00 or 9:00. They were tearing everything down. Mrs Dorotik testified that this all happened close to dark but she did not know what had happened when appellant wasn't there any longer. (3RR 35; 7-18:)      4.


KE

The state calls Mr Cervantes Michael, The said victim. Mr Cervantes was employed by a concrete company and had worked out of Town all week. He lived in a rent house owned by Ernest torres, with his brother-in-law Guadalupe Luna, Jr, along with his wife and six Kids ages 4-12 year's. (3RR 38; 10-16;) Mr Cervantes claimed on the evening of August 23, 2013, was when he had first meet Appellant who was standing outside along with his wife and brother in-law. (3RR 40; 15-19;) Appellant had asked about work and was informed it would be after labor day but they may be hiring. (3RR 40; 21;) (3RR 41; 1-2;) The next day August 24, 2013 appellant came back and had asked some questions about work. (3RR 44; 12-21;) Appellant had came back again asking about work again but started getting Pushy. (3RR 45; 11-24;) Mr Cervantes that he had gotten mad and after words he tell Appellant he wasn't go to help get him a Job and Just leave. (3RR 46; 1-8;) Mr Cervantes Testified that Appellant had walked off but was really at the back of his truck and Appellant and Kid's, and he didn't Know it, but Appellant must have haerd him on the Phone while he had talked to his wife from inside his truck. (3RR 46; 7-13;) (3RR 47; 4-17) (3RR; 49; 17-19;) 5.



state, Witness. Mr Cervantes testified that he gets out of his truck and the appellant confronts him he steps up to him and says I don't like what you said and so Appellant says we can finish this now and he pulls out the knife. (3RR47; 18-25:) (3RR 48; 1-3:.) state Leading. (3RR48; 8-25) Defense: Object your honor, leading. (3RR49; 1:) The court; sustained; (3RR44; 2:) State still Leading; 3RR 44; 3,14); 3+4) Mr Cervantes testified that he gets scared for himself and his kids because they where playing on the truck and everything. And so I look in the back of my truck and there's some stuff from work, some wooden stakes so I get a couple of those out to keep Appellant away from me (3RR4; 16-25:) Mr Cervantes claim Appellant starts calling his daughter's name, wanting her to come to him. I told my daughter to stay where she was and go inside (3RR51; 15-24:) Mr Cervantes testified, after that He started yelling across the street to my brother-in-law, I started waving at him and we were far apart and he finally comes back down and see's what's going on (3RR52; 5-12) Mr Cervantes claims Mr Luna, tried settle Appellant down and you know, tried to make him put the knife away but Appellant was still arguing, say I'm going to finsh this on matter what. (3RR 52; 15-14:)

6.



Mr Cervantes testified that Appellant started calling his daughter, that isn't said anywhere, any Police report or even in Mr Cervantes written statement. Counsel did not Object. Mr Cervantes testified that he started Yelling and waving across the street and the Second time he started Yelling. Mr Luna finally comes Back down, and tried to settle Appellant down, You Know, tried making Appellant Put Knife away. (3RR 51; 15-25) Mr Luna Testified That once he got down to Mr Cervantes and appellant, they were cussing eachother and Mr Luna Saw his brother-in-law with a Stick in his hand and the appellant with a Knife. Mr Luna Testified that he was close to touch Mr Cervantes and almost touch Appellant. And yes could a Knife and there no doubt it was a Knife. (3RR 73; 24-25) (3RR 74; 1-14:) Mr Luna testified he heard, at first thought it war Mr Cervantes Yelling at the Kids but when I got there, it was Appellant and Mr Cervantes. (3RR 73; 20-22)

7.

Mr Luna testified That he told his brother in-law to go inside the house and Kirt to Leave.(3RR 86;6-7:) Mr Luna testified that if Mr Cervantes said You told him that the Law had been called once you came down, that would be wrong.(3RR 89; 21-23:)

STATE CAlls GeoGina Maritz The Primary investigating OFFicer. OFFicer Maritz admits She never made any attemP to Look For the club or stick, fact being she did not go back to the crime scene after the arrest.(3RR 117; 12-13:) (3RR 117; 15-17:) (3RR 117; 21-23:) OFFicer testified that she went straight to the traP shoot and she had not stoP anywhere before getting to The traP shoot, not even the Cervantes and Lunas home.(3 RR 119; 16-21:) OFFicer Maritz testified that PeoPle were Flagging US down. and after getting to the APPellant I Placed him in handcuffs and Sat him down on the ground.(3RR 94;2-7:) (3RR 96;1-2:) OFFice Maritz TesTified that she had DePuTY Luis Rodriguez with her. State Testifying that OFFicer Maritz did have a Partner riding with her.(3RR 99;19-22:) (3RR 101;18-19:) OFFicer testified that she talked To a lady by the name oF staci Dorotik while The APPellanT was sitting on the ground handcuffed.(3RR 108; 17-25)

8.



STATE making a statement, Regardless of who called the cops when and first and for what reason, any doubt that it was a Knife you saw in Kirt's hand.(3RR 76; 1-6:) It was a Knife, Ive seen Plenty of Knife's before that. (3RR 76; 7-8:) Mr Luna admits he had been hospitalized at Rivercrest hospital For Attempted Suicide and drug and alcohol addiction.(3RR78; 6-15:) Mr Luna admits that he told mrs Moreno that something was happening at the house, and I Took off. And he hadn't received a telephone call Just before then.(3RR 81; 17-24:) Mr Luna Testified that he only saw Appellant with a Knife in his front Yard or on the side of the house where him and my brother-in-law were Confronting each other.(3RR83; 16-19:) Mr Luna Testified that It was 4:00, 4:30 Pm when that happened(3RR83; 20-21:) Mr Luna testified that he really could say what Kind of Knife because all he Knew it had a Point on it, and he had Just saw like a silver edge on it. (3RR 85; 7-11:) Mr Luna testified That he had never told anybody That Appellant Followed him or Mr Cervantes around, and he never Told the deputy sheriff that.(3RR 85; 17-22:)

9.

Mr Cervantes testified that once the sheriffs department showed up he did not come out not untill everything was over. (3RR 53; 19-20:) Mr Cervantes turned around and testified That he did not come back out untill the sheriff showed up. (3RR 60; 8-9) Mr Cervantes testified that Luna tried to make appellant put the knife away and get appellant to go inside 3RR (52; 16-20) Mr cervantes wants to make sure he covers all grounds. He also testified that Mr Luna gets appellant to go back where they were because he went inside. (3RR 52; 21-23:) The state starts testifying for the witness (3RR 52; 24-25:) (3RR 53; 1-11:) Mr Cervantes testified that Mr Luna escorted appellant back to his house, but he's not sure. Mr Luna go's back to the clay shoot. (3RR 53; 8-10:) Mr Luna testified that once he arrived And told Appellant what's going on and that appellant and Mr cervantes was Just talking. Mr Luna Testified he told mr cervantes to go inside and told appellant To leave because he was going to call the law, and when the started separating he took off to go call cops (3RR 74; 16-24) mr Luna testified, and what he said was'nt Like Mr Cervantes. 10.

Mr Cervantes testified that his brother-in-law Mr Luna gets appellant To go inside and then Mr Cervantes back door's and testified that Mr Luna gets appellant to go back where they were at, because he go's inside. (3RR52; 20-23:) And now The State's start's lead and testifying. (3RR53; 2-11;) Defense never object's. State Testifying and lead(3RR54; 4-23:) Mr Cervantes testified that this happened around 1:00 o'clock Pm.(3RR57; 9-12:) Mr Luna testified this all happened around 4:00, 4:30,(3RR83; 21:) Officer GeorGina Maritz Testified she was dispatched around 6:35 pm Mr Luna was never at Mr Cervantes house when appellant and Mr Cervantes had words. (3RR92;18-19:) Mr Luna testified he heard his brother-in-law Yelling and thought he was Yelling at the Kids, but once I got there it was Kirt and my brother-in-Law into words.(3RR73;20-22:) Mr Luna back door's and testified that he told Mrs Moreno And them that there was something happening at the house, and he took off, and he wasn't on the Phone. (3RR81; 17-24:) Witness for Defense Mrs Irma Moreno Testified that Mr Luna had been on the Phone and had gotten upset while on the Phone (4RR 20;14-18:)

11.

Mr Cervantes testified that his brother-in-law Mr. Luna gets appellant to go inside and then Mr Cervantes back door's and testified that Mr Luna gets appellant to go back where they were at, because he go's inside. (3RR 52; 20-23:) And now The State's start's lead and testifying. (3RR 53; 2-11;) Defense never object's. State Testifying and lead (3RR 54; 4-23:) Mr Cervantes testified that this happened around 1:00 o'clock pm (3RR 57; 9-12:) Mr Luna testified this all happened around 4:00, 4:30, (3RR 83; 21:) Officer GeorGina Maritz Testified she was dispatched around 6:35 pm

Mr Luna was never at Mr Cervantes house when appellant and Mr Cervantes had words. (3RR 92; 18-19:) Mr Luna testified he heard his brother-in-law yelling and thought he was yelling at the Kids, but once I got there it was Kirt and my brother-in-law into words (3RR 73; 20-22:) Mr Luna back door's and testified that he told Mrs Moreno And them that there was something happening at the house, and he took off, and he wasn't on the Phone. (3RR 81; 17-24:) Witness for Defense Mrs Irma Moreno Testified that Mr Luna had been on the phone and had gotten upset while on the Phone (4RR 20; 14-18:)

12.



Mr Cervantes Testified that the APPellanT came back to the front Yelling For him to come outside, and I closed the curtains. APPellanT was there, and he left. I guess thats when the sheriff's deParTmenT show uP, I didnt come out I stayed inside untill everything was done. (3RR 53; 12-20:) Mr Cervantes testified that Mr Luna had got there and we were arguing and APPellanT had his Knife and I had my stakes in my hand. (3RR 59; 11-12:) Mr Cervantes testified that his brother-in-law or Ernest had call the Police. (3RR 61; 8-9:) They had told me they had already had called the law. 3RR61;11: LuPe my brother-in-law told me they had alReady called the Police. Because I had called my wife and told her he was harassing me, and she called her cousin Ernest Torres and he called the Police. (3RR61;11-25:) LuPe told me their was Police on the way(3RR 62; 5-6:) And LuPe haD to me he had called the Police.(3RR 63; 2-4:) The reason he had call his wife instand of the Police was because MY Phone was IN the truck charging and I didnt have time to wIth him with a Knife at him.(3RR 63; 17-19:) Defense, I thought you said your Phone was in your Truck,(3RR63; 21-22:) Yes MY Phone was in my Truck charging.(3RR63; 23:)

13.

Mr Cervantes testimony about the length of Knife, he believed about so long, he wasn't sure. (3RR 50; 14:) Mr Cervantes stated that he see's Knife and get scared for himself and his Kids because they were Playing on the truck (3RR 49; 14-18:) Mr Cervantes earlyer testimony, That APPellanT had walked off but APPellanT heard him on his Phone To his wife because appellant was at the back of his truck while he was on Phone inside cab of his truck, and his Kids were also in back of his truck by his earlyer testimony. (3RR 46; 7-13) (3RR 49; 16-18:) There is no way Mr Cervantes would'int have Known appellant was at the back of his truck, With Kids, how could some one not know who would be around there Kid, for god sake (3RR 49; 16-18:) (3RR 47; 11-17:) There was no Kids or a Knife Mr Cervantes testiFied that once his brother in-law, Mr Luna gets there he trys to settle appellant down, trys to make appellant Put the Knife away, APPellanT was still arguing Saying Imstill going to Finish this no matter what. (3RR 52; 15-19:) Mr Luna testimony was not anything like Mr Cervantes, infact he nevry said anything about appellant having Knife out or PuT Knife away. (3RR 74; 16-21:)

14

STATE Call's GuadaLuPe Luna Jr, Testified he lived with his Sister and his brother-in-law and their Kids. Mr Luna is currently disabled Caused by him running into an 18 wheeler. (3RR 66; 10-18:) Mr Luna testified he had droped APPellant off at home and then he went back To the traP shoot. and then thats when I heard at first I thought it was my brother-in-law yelling at the Kid's, but when I got there it was KirT and my brother-in-law into words. They were like cussing each other, and I saw my brother-in-law with a stick in his hand, and I saw KirT with a Knife in his hand. (3RR 73; 19-25) (3RR 74; 1-2:) Mr Luna testified that he was close enough to touch his brother-in-law and he could almost touch KirT. ANd he could see a Knife There was no doubt. (3RR 74; 6-14:) Mr Luna TesTified he told KirT, You Know, what's going on. AFter that they were Just talking and my brother-in-law said, well he Just come's over he's drunk and I told Kirt Please leave because Im going To call the cops. And when they started seParating, I took off to call the Police. (3RR 74; 16-24)

15.

Defense calls Ernest Torres, Mr Torres Testified that after Mr Luna used the telephone Mr torres took his time getting To the Trap shoot. He stopped at Mr Lunas house to pick up some trash that was in The yard, and was throughing it in the dumpster. At that moment the deputy drove up right where I was at but across the street and I motioned for him that he probably wanted To go over there across to the trap shoot, and he made a U-turn and went over there. Mr Torres Testified that there was a deputy already there. (4RR 32; 6-20:) Officer Maritz Testified That later on she talked with Michael Cervantes and Lupe Luna. Jr, (3RR 109; 4-6:) Deputy Maritz testified she had not taken the statements, and it was in her report either. Officer admits, she had been told about their statement and she did read them. Officer Luis Rodriguez took the statements. (3RR 115; 21-25:)(3RR 116; 1-5:) Officer Testified That The club that Mr Cervantes used was not evidence. (3RR116; 8-21:) Officer Testified that she search the immediate area for the Knife, she testified that She also looked in the front yard of Mr Cervantes home. (3RR118; 1-8:)                    16.

# Application

Mrs Staci Dorotik for the state. Mrs Dorotik testified that she didn't know what had became of Appellant once he was'nt at the trap shoot any longer.(3RR 35; 16-18:) Fact; there is no way Mrs Dorotik would not have known what had become of Appellant if she would have talked with Officer Maritz, like officer testified she had. (3RR 96; 1-2:) also(3RR 108; 17-25:) Officer Maritz had also testified that she had another deputy riding with her. Deputy Luis Rodriguez;(3RR 94; 7:) and(3RR 99; 18-22:) Ernest torres for Defense, testified that the second deputy drove up after there was already a deputys car up at the trap shoot. (4RR 32;10-11:) also(4RR 32; 15-16:)and(4RR 32;24-25:) There were only two deputy that had worked the case. The state had also testified that Officer Maritz had another officer riding with her.(3RR 101; 18-19:) Officer Maritz testified she had talked with Mr Torres (3RR 109; 1-2:) Officer had not talked with Mr torres.(4RR 32; 24-25:)

Mrs Staci Dorotik testified That she didn't Know where appellant went when he wasn't There any longer.(3RR 35; 16-18:) Mr Torres testified That he didn't see another deputy uPat The traP shoot he saw a Police car.(4RR 32; 24-25:) OFFicer Said The club or stick that Mr Cervantes had, was not ParT oF the evidence.(3RR 116; 11-12:) OFFicer admits that she never Looked For the stick, or Club (3RR 117; 15-17) (3RR 117; 21-23) OFFicer Maritz testified she had not StoP anywhere beFor getting to the APPellanT, not even the Luna's home(3RR; 119; 16-21:) oFFicer testified that she Searched the immediate area. And now she Searched Mr Cervantes front Yard.(3RR 118; 3:) (3RR 118; 8:) oFFicer Maritz earlyer testimonY oFFicer Said, admits she didn't go to the crime Scene after the arrest (3RR 117; 22-23) oFFicer maritz testified she had not stoPPed anY where beFore getting to the aPPellant (3RR 119; 16-21:) OFFicer admits she didn't have the Fact that Mr Cervantes had a club in her rePorT.(3RR 121; 19:) OFFicer Maritz admits she did not take there StatemenT, buT she had been told about it and she had read it.(3RR 115; 12-25:) (3RR 116; 1-3:)

Pg.2.

Deputy GeorGina Maritz testified for State.
Deputy Maritz testified that she had been
dispatched around 6:35 Pm and arrived around
6:53,Pm and had placed appellant in handcuffs
and sat him on the ground, Officer Maritz
then talked to Staci Dorotik, while appellant
was handcuffed and sitting on the ground.
(3RR 92; 14-19:) (3RR 119; 1-3:) (3RR 96; 1-2:)
(3RR 108; 17-25:) Mr Michael cervantes testified
it all happened at 1:00 Pm (3RR 57; 10-12:) Mr
Guadalupe Luna Jr. testified that every thing
happened 4:00 Pm 4:30 Pm (3RR 83; 16-21:)

Direct examination state calls Michael
Carvantes Voluntarily testified about prior
criminal record Therefore leaving a false
impression with Jury. (3RR 39; 7-21:)

Pg3.

STaTEs witness, Michael Cervantes TesTified That appellant had gotten PushY about a Job, and that made him mad. so he tells appellant he's not going to help him with a Job, and then he told appellant To leave. Appellant start's walking off and so Mr Cervantes call his wife and tells her Appellant was bothering him. Mr CervanTes TesTified that Appellant hadnt really walked off, appellant was Just at the Back of his truck along with the Kids, but he did not Know appellant was there. So must have haerd him on the Phone while talking to his wife From the inside of his truck. (3RR 46; 3-13) (3RR 47; 13-15) (3RR 49; 16-18) Mr Cerantes testified that Appellant told him he didnt like what he Said, and so appellant tells him we can finish this now, and Appellant Pulls out the Knife. Appellant confront's him as soon as he gets out of his truck. Mr cervantes Kids were said to be Playing in the back of the truck, but mr Cervantes testified that he had some stuff from work, some wooden Stakes, and so he gets a couple of stakes ouT To Keep appellant away (3RR46;11-13) (3RR 47; 17-19) (3RR 49; 16-19) (3RR 49:20-25)

Pg 4.

Mr Luna Testifying for the state, Mr Luna's testimony that he heard Mr Cervantes Yelling but thought it was at *The Kids*, and that once he arrived Mr Cervantes and APPellanT were cussing at each other and he saw his brother-in-law with a Stick and APPellanT with a Knife and he was close enough to touch Mr Cervantes and could almost touch APPellant, there was no doubt about a Knife. (3RR 73; 20-25) (3RR 74; 1-14;) Mr Luna testified that he told APPellanT, whats going on and that Mr Cervantes and APPellanT were Just talking, he tells Mr Cervantes to go inside the house and APPellanT To Please leave. And when they started separating he take of to call Police. (3RR 74; 16-24;) Mr Cervantes Testimony said something eles. (3RR 52; 13-23) Mr Cervantes Yelling was what Mr Luna said he heard, but now it's because he told ms Moreno ThaT something was going on, and he took off. But he never received a Phone call. (3RR 81; 14-24) Also Mr Luna time about when this had happened was not the same as Mr Cervantes or Staci Dorotik. (3RR 83; 20-21) (3RR 35; 9-15) (3RR 57; 9-12)    Pg 5.

Mrs Irma Moreno Testifying for the Defense, That Mr Luna had been on the phone and he had gotten upset (4RR 20; 14-18) She had also talked to Mr Luna about not leaving. (4RR 21; 4-6) Mr Luna Testified that he had asked Appellant To leave. (3RR 75; 3) Court Took break, After the break (3RR 77; 15) Mr Luna Testified that he told Appellant To go inside his house. (3RR 85; 3) Mr Cervantes earlyer Testimony, he gets Appellant to go inside, he get him to go back to where they were at. (3RR 52; 20-23) Mr Luna changes his testimony again, (3RR 86; 6-7) Mr Cervantes talking about why he didn't call the Police. (3RR 61; 6-25) Mr Cervantes Testified about how he was able to get he's Brother-in-law, Mr Luna To come over. (3RR 62; 18-21) Mrs Irma Moreno Testified That it was To far To hear anything from Mr Luna's house, and you wouldn't have been able To Tell if something was going on from that far. (4RR 21; 25) (4RR 22; 1-7) Ernest Torres Testified that It was several hundred yard To far To hear anything from the Lunas home. and Mr Luna had to have glass to see, but his mother had giving him a Pair once or Twice. (4RR 33; 2-5) (4RR 33; 11-19) P.26.

Mr Luna's earlyer testimony had showed that Mr Luna was lying about hearing his brother-in-law yelling. (3RR 73; 20-22:)

Mrs Irma Moreno testified That you could not hear anything from the highway, and you wouldn't be able To see any going on down at the Highway. (4RR 21; 25:)

(4RR 22; 1-7:) Ernest torres testified that the Trap shoot was several hundred yards and you couldn't hear anything from the trap shoot to the Highway, and as for as Lupe he had to have glasses to see, and he's mother had giving him glasses once or Twice. Lupe had no glasses (4RR 33; 1-5:) (4RR 33; 11-12:) and (4RR 33; 17-19:) Mr Luna testifys he heard his brother-in law yelling but once he got there it was Appellant and his brother-in-law Cussing each other and he saw his brother-in-law with a stick in his hand and saw appellant with a Knife in his hand and he was close, he could Touch his brother-in-law and almost touch Appellant and he could see the Knife There was on doubt about it. (3RR 73; 21-25:) (3RR 74; 1-14:) Mr Luna admit he didn't really see, he saw, Just a silver edge and he Just Knew it had a point, so he did'nt see a Knife (3RR 85: 7-11:)

Pg 7

Mr Luna Testified that he never told the deputy sheiff that Appellant followed you and Mr Cervantes around. (3RR 85; 17-22)

Officer Maritz Testified That People were flagging us down, meanning Two. (3RR 94; 7:) state testifuing That she had Deputy Luis Rodriguez riding with Officer Maritz (3RR 99; 18-20:) (3RR 101; 18-19) Ernest Torres testified that he stopped at the Lunas house to Pick up some trash that was in the Yard and he was throughing it in the dumpster, at that moment the deputy Luis Rodriguez Pulled up, and Mr Torres motioned for the Deputy that he Probably wanted to go over to the Trap Shoot. And the Deputy made a U-Turn and went over There, and there was a deputy already There. (4RR 32; 5-20:) There was Just officer Maritz that first showed up.

Officer Maritz Testified that she had talked To a Lady by the name of Staci Dorotik while Appellant was handcuffed and sitting on the ground (3RR 96; 1-2:) (3RR 108; 17-25:) Officer Maritz Testified she had talk with Ernest Torres and Later she talked to Michael Cervantes and Lupe Luna Jr. Pg 8.

Mr Luna said he saw a Knife, when he even admits he had'nt seen a Knife, the truth is Mr Luna was never down at the house with he's brother-in-law and appellant There was NO Knife. (3RR 74; 1-14:) and (3RR 85; 7-11:)

Mr Cervantes Testified his brother-in-law went back To Trap shoot. (3RR 53; 7-10:) State Testifying and leading witness (3RR 52; 24-25) (3RR 53; 1-11:) Mr Cervantes testified that Mr Luna get appellant To go inside and that he went inside, and then back doors and testified that he assume's appellant go's into his house. (3RR 52; 20-23:) (3RR 53; 4-8:) Mr Luna's testimony. (3RR 74; 19-24:) and (3RR 75; 3:) Mr Luna now back door's and testified he told appellant to go inside his house. (3RR 85; 3:) For two People who live together, They sure couldn't Keep there story's straight. Mr Luna was even able to see his brother-in-law Yelling. (3RR 75; 22:) Mr Luna even testified about how big the Knife was after admiting he had'nt seen a Knife. (3RR 85; 7-16:) Mr Cervantes get his testimony messed up, he's Contradicting himself a Just ball face lying. (3RR 61; 6-25:) 3RR 62; 1-8 Mr Cervantes testified he had not called Lupe. (3RR 62; 7-8:) Mrs Irma Moreno testified That mr Luna had been on the Phone and got. really upset. (4RR 20; 16-18:) Pg10.

Mr Luna Testified about what kind of knife it was, but in earlyer testimony, he didn't see he just knew it had a point on it, all he saw was like a silver edge on it. (4RR16;1-6) and (3RR85; 7-11:) Mr Luna Testified that he never told the deputy sheriff that after the confrontation the appellant followed him and Mr Cervantes around. (3RR85; 17-22:) see; (CR; P.8) Officer Georgina Maritz testified That she hadn't taken Mr Cervantes statement, she also testified that she hadn't talked to Mr Luna or Mr Cervantes about the case. (3RR125;15-17:) Officer testified that she hadn't taken the statement and it wasn't in her report, also she didn't stop anywhere before getting to Appellant, and she didn't go back to the crime scene after the arrest. (3RR115; 21-24:) and (3RR119;16-21) (3RR117; 15-17:) (3RR117; 22-23:) From The Officers own Testimony, She had not talked with either Mr Cervantes or Mr Luna, she didn't stop anywhere before the arrest or after the arrest, and by her on admission She hadn't talk with either witness. (3RR117;15-17) (3RR117; 22-23:) (3RR119; 16-21:) (3RR125;15-17:) Officer Maritz was The Primary Investigator. (3RR117; 12-14:)     Pg 9

Officer Maritz Testified that she search The immediate area, which would have been The trap shoot area. Officer Maritz Testified She had searched the front yard of Mr Cervantes.(3RR118;1-8:) When could Officer have Search the yard of Mr Cervantes. Officer had testified earlyer that, she had not went back to the Scene after the arrest(3RR117;15-17:) (3RR119;22-23:) Office Maritz testified she had not stoped anywhere before getting to the appellant, not even Mr Cervantes,(3RR119;16-21:) There was'nt any People waving and Pointing, Like Officer claimed.(3RR99;1-3:)(3RR94;7:) (3RR94;2-3:) State Testifying and leading. (3RR92;21-25:) (3RR93;1-13:) Counsel says nothing, this was'nt a trial, it was more like a linch mob.... Officer Maritz Testified, or admits that they never Looked for a Knife.(3RR133;21-23:) Earlyer Testimony from Officer Maritz, (3RR118;1-8:) State Testifying and Leading, (3RR132;18-25:) (3RR133;1-11:) State and Officer giving false testimony.(3RR133;2-7:) Appellant was arrest, August 24, 2013. Officer Maritz Probable Cause Affidavit Dated August 28,2013 and Filed August 29, 2013.(CR;P,8:) Appellant is inclianed to beleave a rope would have been cheaper. Pg 10

Officer admits now that they had not searched for a Knife. (3RR 133; 21-23:)

Mr Guadalupe Luna Jr, admits he couldn't tell about Knife, he Just knew it had a point, and he Just saw like a silver edge. Their was NO Knife. (3RR 85; 7-11)

Mr Luna Earlyer testimony, he seen a Knife (3RR 74; 6-14:) Officer Georgina Maritz Testified That The weapon Mr Cervantes had a stake or club are what ever the court will call it, wasn't evidence, So Appellant Know's the court's will do as it Pleases, as for as Constitutional Law, and though my sixth and fourteenth Amendment rights were Just taking away as though Appellant had no right's, from the 119th Judicial District Court of Concho County, Texas, To Appellant Attorney. Anyone who can read, will SEE. The officer did no investigotion, and as for Appellant said attorney he didn't even impeach Mr Michael Cervantes Testimony as to his, about his pass criminal record, Mr Guadalupe Luna Jr testimony of his Pass criminal record as well, and Officer Georgina Maritz For her contradicted testimony Appellants attorney should have inpeached their Testimony. Pg 11.

# ARGUMENT

The 119th District Court of Concho County erred in holding the evidence legally suficient To Swtain Appellants convicition For aggravated assault by use or exhited of a deadly weapon namely a Knife. when there was no Physical evidence that he used or exhibited a Knife. Conviction cannot rest solely on hearsay. King V. State 645 S.W 2d 782.

Is the evidence legally and Factually sufficient to support a conviction under Vernon's Ann, Texas Code Crim. Proc. Art. 42.12, § 3F(a)(2), now 42.12. § 3g (2) and 22.02 (a)(2) of the Texas Penal Code uses or exhibits a deadly weapon during the Commission of an Assault. Ellison V. State (Tex, Cr, App.) 419 S.W. 2d 849. Appellant never said he would do anything, And Appellant had had not made any Kind of a threat. And there wasn't an assault on any one.

1.

Comming out of the gate, state already made a substantial showing of denial of constitutional rights, under the Sixth and Fourteenth amendment. State witnesses testifying Voluntarily about Prior criminal record. Michael cervantes and GuadaLuPe Luna. Jr. (3RR 39; 4-21) (3RR 67; 3-20) And Officer Maritz Georgino should have also been impeached for falsely testifying. (3RR 85; 17-22) (CR; 82) Petitioner's factual sufficiency arguments are based on the facts of the record for APPeal. Defendant's Counsel's Performance was deficient because counsel made errors so serious that he was not Functioning as the "counsel" guaranted the defendant by the Sixth and Fourteenth amendment and counsel's errors were so serions as to dePrive the defendant of a fair trial with a reliable result.

It is a Fundamental rule of criminal law that one cannot be convicted of a crime unless it is shown beyond a reasonable doubt that the defendant commited each elemend. XIV; Tex code Crim Proc. Ann art 38.03 (vernon Supp 2008.) Tex Penal code ann. § 2.01 Evidence is legally insufficient if when viewed in a light most favorable To the Prosecution, a rational trier of fact could not have found each element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318, 99 S. CT 2781, 2789, 61 L. Ed 2d 560, 573 (1979) Laster v. State, 275 S.W. 3d 512, 517 (Tex crim APP. 2009) Mrs Dorotik could not Identify APPellant without being Lead by the State. (3RR 28; 19-25.) Therefore dening APPellants fourteenth amendment, Prohibitting a conviction except upon Proof beyond a reasonable doubt of every fact necessary to constitute the crime with which a defendant is charged.

The court in Agurs Justified this standard of materiality on the ground that the Knowing use of Perjured testimony involves Prosecutorial misconduct and, more importantly, involves a corruption of the truth seeking function of the trial Process Id, at 104, 49 L Ed 2d 342, 96 S. Ct 2392.

3.

If counsel had impeached the testimony of state witnesses officer Georgina Maritz, and Michael cervantes, Guadalupe Luna Jr, there credibility would have obviously been so weak as to undermind confidence in the verdict under Johnson V. State, 23 S.W. 3d 1 (Tex Crim. APP 2000)

Petitioner directs to no evidence, insufficient to show the appellant exhibited a deadly weapon, also insufficient To show defendant used or intended to use the Knife so as to inflict serious bodly harm or death, Harris V. State, 562 S.W. 2d 463 (1978) also. S.W. 2d 285, 1980)

insufficient to establish That The Knife he exhibited was a deadly weapon. BenJamin Davidson Jr Appellant V. The State of criminal Appeals of Texas 602. S.W. 2d 272; 1980) The allegation of ineffective assistance of counsel will be sustained only if they are firmly founded. Johnson V. State 614. S.W. 2d 148 (Tex crim APP 1981)





State's witness Mr Michael Cervantes Testifying voluntarily about his Prior criminal record without any Prompting or maneuvering on Part of defendant's attorney. (3RR 39; 4-18:) Is the evidence legally and factually sufficient To Support a conviction under Vernon's Ann. Texas Code Crim. Proc ArT. 42.12 §3F(a)(2), now 42.12 §3g(2) and 22.02 CJis:13150005 Second Degree Felony, of the Texas Penal code in the absence of evidence that defendant had no weapon. namely a Knife at time of arrest, and Police officer making no attempt to recover a weapon.

The Due Process Clause of the Fourteeth Amendant Prohibits a conviction except upon Proof beyond a reasonable doubt of every fact neccessary To constitute the crime with which a dEFendant is charged. Jackson V. Virginia, 443 U.S. 307, 315 (1979). The necessary element in this case that was not Proven beyond a reasonable doubt was the credibility of the States witnesses testimony.

5.



STATES, DIRECT Examination, Michael cervantes VolunTarily testifies about his Prior criminal record without any challenge from Defense, Therefore state leaving false impression with the Jury. (3RR 39; 4-18:)

Defendants counsel Feld to investigate witness Prior Criminal record, therefore state able to leave false impression with Jury.

AppellanT needs not to show but a reasonable Probability that not for Counsel's error, AppellanT would not have been convicted of aggravated assault with a Deadly weaPon, namely a Knife. Rather the issue is whether he received a fair trial that Produced a verdict worthy of conidence.

CF. Kyles v. whitly, 514 W. s 419.434 (1995)... A criminal defence attorney must have a Firm command of the "facts", as well as governing law before he can render reasonable effective assistance of counsel.

Ex Parte welbon 785 s.w. 2d 391, 393 Tex. APP. (1990). Citting ExParte Ybarra. 629 s.w. 2d. 943, 946 Tex Crim. APP. (1982).

The criminal episode begins when the attacker in any way restricts the victims freedom of movement and it ends with the final release or escape of the victim from the attacker's control. Cruz v. State 238 S.w 3d 389, 398 [Tex APP-Houston] 1st Dist [2006, no PeT.) citing Burms v. State 728 S.W. 2d 114, 116 (Tex APP Houston [14Th Dist) 1987. Pet ref'd) See Figueroa v. State, NO 07-05-0314-CR. 2006 Tex APP. LEXiS 2603, 2006 WL 825036, at 2 Tex APP-Amarillo 2006, no PeT)

A new trial is required if the false testimony could in any reasonable likelyhood have efected the Judgement of the Jury, 405, U.S. at 154, 31 L Ed 2d 104, 92 S.cT 763.

566 S. W. 2d 612 (Tex cr APP-1978) we found insufficient evidence of a deadly weapon in Alvarez v. State 566 s.w 2d 612.

Benjamin Davidson Jr Appellant V. The State of criminal APPeals of Texas 602 s.w. 2d 272; 1980 Tex Crim APP. Appellant argues that This evidence is insuffient To estblish That said Knife he exhibited was a deadly weapon. For the ranson's Stated above,

7.

Being a parent and having someone around you didn't trust around your Kids as Mr Cervantes stated; (3RR 46; 10-11.) How could you not Know if they were Playing around that person. If Mr Cervantes has claimed the Kids were Play in back of Truck, not Know appellant, if there or not. (3RR 46; 7-13) Appellant's Point being, this never happened, there was no Knife. Mr Cervantes testified that Appellant Pulled a weapon, a Knife when he get's out of his truck, but Yet he could Look, and reach in back of his truck and get a Stick, Stake, or club, wood mean; The criminal episode begins when the attacker in anyway restricts the victims Freedom of movement and it ends with the final release or escape of the victim from the attackers control. Cruz V. State 238 S.w.3d 389, 398 (Tex App-Houston] 1st Dist [2006, No Pet.) Citing Burms V. State. 728 S.w. 2d 114, 116(Tex APP Houston (14Th Dist) 1987. Pet refd). see Figueroa V. State, No. 07-05-0314-CR. 2006 Tex. APP. LEXis 2603, 2006 WL 825036, at 2 Tex APP-Amarillo 2006, No Pet) not designed.

KE 8.

KE

STATES witness Mr Cervantes Testified That he Looked in the back of his truck and gets a couple of Stakes out. APPellant can only think of the movie, walking tall. APPellant is of a world were 2+2 @quals = 4 Four. But yet feels as if Hollywood has Casted this roll.

The criminal ePisode begins when the attackers in any way restricts the victims freedom of movement and it ends with the final release or escaPe of the Victim from the attackers control. Cruz V. State 238 S.W. 3d 389,398 (Tex APP - Houston] 1st Dist [2006, NO PeT.) citing Burms V. State. 728 S.W. 2d 114, 116 (Tex. APP Houston [14Th Dist) 1987. PeT ref'd) See Figueroa V. State, NO. 07-05-0314-CR. 2006 Tex APP Lexis 2603, 2006 WL 825036 at 2 Tex APP - Amarillo 2006, noPeT)

STATES, witness TesTified ThaT at some PoinT APPellanT start's calling Mr Cervantes daughter, There is nothing about any Kids any were, nothing, a Statement of Mr Cervantes, or either of the Officer's rePorT. Being a father, the world would have Known. (4RR 12; 10-25:) (4 RR 13: 4-21) SuPreme CourT held that the denial of the right of effective Cross-examination was Constitutional error of the First magnitude requiring automatic reversal 719 F 2d at 1464 quoTing Davis V. Alaska 415 US 308, 318; 39L Ed 2d 347, 94 S. CT 1105 (1974) 9.

The court in agurs justified this standard of materiality on the grounds that the Knowing use of Perjured testimony involves Prosecutorial miconduct and more importantly, involves a corruption of the truth seeking function of the trial Process Id, at 104, 49 LEd 2d 342, 96 S.ct 2392.

The courts would have to Put blinders on as to not see all of the Perjured testimony of each one of the States witness. Staci Dorotik, Maritz, each one of these witnesses have contradicted their own testimonys as well as onenother.

(Inconsistency of statements) as grounds for Impeachment in general. Rules of evid, rule 608(b) 609(a)

Factual Sufficiency; Petitioners factual sufficiency arguments are based on the facts of the record for aPPeal. Defendants cousel's Performance was deficient, because counsel made errors so serious as to dePrive the defendant of a fair trial with a reliable result.

10.

The court reasoned that a deliberate deception known to be Perjured is inconsistent with the rudimentary demands of Justice Id at 112 79 L Ed 791, 55 S.ct 340, 98 ALR 406. The court reaffirmed this Principle in broader term in Pyle v. Kansas 317 US 213 87 L Ed 214, 63 S.ct 177.(1942). Where it held that allegations that the Prosecutor had deliberately suppressed evidence favorable to the accused and had knowingly used Perjured testimony were suficient to change a due Process violation.

CF. Napue v. Illinois, 360 US. 264, 269, 3 L Ed 2d 1217, 79 S.ct 1173 (1959) The Jury estimate of the truthfulness and reliability of a given witness may well be determinative of the witness in testifying falsely that a defendants life or Liberty may depend.

The court in Agurs Justified this standard of materiality on the ground that the knowing use of Perjured testimony, involves a corruption of the truth seeking function of the trial Process Id, at 104, 49 L Ed 2d 342, 96 S.ct 2392.

11.

Officer Maritz testified she didn't stop anywhere before getting to the appellant even the cervantes home (3RR)19; 16-21:) Officer Maritz admits she did go to crime scene after the arrest. How is it that The officer didn't go to the crime scene before or after arresting Appellant, (3RR 119; 16-21:)(3RR 117; 22-23:) but yet officer sworn out Probable cause Affidavit stated that she had been advised by Guadalupe Luna Jr. that he had Observed Appellant threatening Mr Cervantes with a knife, and had Followed them around. With officer own Testimony shows that she never even went to the so called crime scene,(3RR 119; 16-21:)(3RR 117; 22-23:) So how was she able to have talked with Guadalupe Luna Jr? OR Michael Cervantes. All Mr Luna Knew was what Mr Cervantes had Told him. Mr Luna Testimony, in it he say's that once he got to Mr Cervantes that the appelant and Mr Cervantes were having words, and that he seen his brother in-law with a stick in his hand and the appellant with a knife in his hand. (3RR 73; 24-25:)(3RR 74; 1-2:) also see; 3RR74; 3-14: also(3RR 85; 7-22:)

12.

Officer GeorGina Maritz admited she had not talk to Mr Cervantes and Mr Luna about the case. She also admited she had not taken there statements and she didn't have anything about stake or club in her rePort. (3RR 125; 15-17:) (3RR 115; 21-24:) Mr Luna Testified he hadn't told any DePuty anything, (3RR 85; 17-22:) Officer Maritz own testimony, she admits she didn't stoP any-where before getting to the aPPellant or anywhere after the arrest. (3RR 119; 16-21:) Fact is Officer Maritz didn't do her Job and Investigate the so call, Crime. I She would have, she would have went to the so call crime scene at lest. She Knew she didn't need a seach warranT, MY so called attorney Knew that, as well as the State's attorney. Probable cause is what she would have had if infact it would have been like what was being shown to the Jury. Probable Cause, officer who made the challenged arrest or search subJectively believed he had grounds for his action. As emPhasized in Beck V. Ohio 379 u.s.89, 85 s.cT. 223 (1964)

13.

Facts, Officer Probable Cause must be such as to warrant a belief by a reasonable man/woman; Wayne R. LaFave and Jerold H. Israel criminal Procedure § 33, at 140, 2d. (1992)    Trier of fact was rationally justified in finding guilt beyond a reasonable doubt: Roberts V. State 220 S.W. 3d 521, 524 (Tex crim APP 2007) Watson V. State 204 S.W. 3d 404, 415 (Tex crim APP 2006) dealing with conviction based on the Prosecutions Knowing use of Perjured testimony. In Mooney V. Holohan, 294 US 103, 79 L Ed 791, 55 s.ct 340, 98 ALR 406 (1935) Appellants ·Officer not Investigating shows, aswell as insufficient Factually evidence to support The conviction. let the court reporter records speak the truth of the inconsistency and credibility of the States witnesses, Appellants fourth and Sixth and Fourteenth amendments right's were denied.

14.

ZIRT
3060 F.m. 3514
Beaumont TX 77705

919078

COURT OF APPEALS
THIRD DISTRICT
P.O.BOX 12547
AUSTIN TEXAS
78711-2547